IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AUGUSTA CAPITAL, LLC | ) |
| | ) |
| v. | ) NO. 3:09-CV-0103 |
| | ) JUDGE CAMPBELL |
| REICH & BINSTOCK, LLP | ) |

MEMORANDUM

Pending before the Court are Augusta Capital's Application to Confirm, Enter and Enforce an Arbitration Award (Docket No. 1) and Reich & Binstock's Motion to Vacate or, Alternatively, Modify the Arbitration Award (Docket No. 12). The Court held a hearing on July 9, 2009.

For the reasons stated herein, Reich and Binstock's Motion to Vacate (Docket No. 12) is GRANTED, and Augusta Capital's Motion to Confirm, Enter and Enforce (Docket No. 1) is DENIED. The Final Award of January 18, 2009 (Docket No. 1-3) is vacated.

Augusta Capital is a company which provides funding for attorneys. Reich & Binstock is a law firm. This dispute involves their contract for Augusta to provide funding for R & B's personal injury cases. Augusta provided more than $5 million to R & B before their relationship deteriorated.

Pursuant to their agreement, Augusta promised to provide funding for litigation expenses for R & B's contingency fee cases. R & B was obligated to repay Augusta only if it obtained a recovery in the funded case; if it was not successful, it generally was under no obligation to pay back the funding. In a successful case, R & B agreed to pay back not only the funded litigation expenses, but also a stipulated funding fee which ranged from 75% to 125% of the funded amount.

RELEVANT PORTIONS OF THE AGREEMENT

The relevant provisions of the parties' contract are:

**Section 4.4 - Resolution of Cases**

(a) Recovery

Firm agrees that, immediately after becoming aware that a Recovery will occur, Firm will inform Augusta, in writing, of the date or approximate date of the Recovery as well as the amount of any Interim Expenses incurred in the Case.

Funding shall be due and payable to Augusta within 10 business days following the occurrence of a Recovery in a Case for which Augusta provided Funding.

. . .

The amount of Funding due and payable to Augusta is the lesser of (a) full amount of Funding provided for the Case, or (b) an amount equal to the Recovery. Fees are due simultaneously with the Funding, pursuant to Section 2.4 of this Agreement.

. . .

    (b) No Recovery

Firm agrees to inform Augusta in writing immediately of any order of disposal, dismissal, voluntary non-suit, or any development that would cause Firm to pursue a Recovery no further in a Case.

. . .

If no appeal or other continued pursuit, including pursuit of the same Case after a voluntary non-suit has occurred, of a Recovery for the Case is to be undertaken by the Firm, Augusta's Funding with respect to the particular Case is not repayable.

**Section 7. Term, Termination, and Remedies.**
. . .

7.2     Either party may terminate this Agreement on 5 Business Days notice in the event of a breach or default by the other, or earlier if Augusta is terminating under Section 9.5. In any such event, the provisions of Sections 7.4 and 7.5 shall apply.

. . .

7.4     In the event of termination, Augusta shall have the option exercisable by notice to Firm within 5 Business Days from the date of giving or receiving notice of termination to continue Funding all or any Cases for which it provided Funding prior to termination. In the event of continued Funding, all provisions of this Agreement shall continue as to such Cases and as to the right of Augusta to information regarding Firm, its practice, and cases that would apply if the Agreement remained in effect.

7.5     In the event of termination, as to all Cases for which Augusta previously provided Funding and as to which it ceases Funding as a result of termination, Augusta shall be entitled to its Funding and Fees for such a Case in the same manner as provided for in Section 4.4. Provided, however, if termination is based on a matter described in Section 9.5, then on termination of this Agreement, Firm shall pay Augusta the amount of all Funding previously provided to Firm that

has not yet been repaid and upon Recovery in a Case for which Funding was provided to Firm, the Fees applicable thereto.

. . .

**Section 9    Default by Firm**

. . .

9.5    Without limiting the generality of the foregoing, any of the following shall entitle Augusta to cease all further Funding without the requirement of 5 Business Days notice as provided for in Section 7.2, and to the remedy provided for in the second sentence of Section 7. 5:

(a) material misrepresentations . . .;

(b) default under Section 9.3 of this Agreement;

(c) failure to pay Funding and Fees to Augusta as set forth in the second paragraph of Section 4.4(a); and

(d) failure to notify August of any items described in Section 11 of this Agreement.

**Section 12.2   Arbitration**

. . .

Notwithstanding the foregoing provisions of this Section 12.2(a), it is hereby agreed that no arbitration panel shall have any power to add to, alter or modify the terms and conditions of this Agreement or to decide any issue which does not arise from the interpretation or application of the provisions of this Agreement.

Docket No. 1-1.

## PARTIES' CLAIMS

Augusta claimed that R & B materially breached the agreement and committed fraud.[1]

Augusta alleged that it was entitled to be paid all funding that had not previously been repaid (regardless of whether the related case was won or lost) and, upon recovery in a case, the applicable

---

[1] Specifically, Augusta claimed that R & B collected recoveries in cases and failed to pay amounts due under the agreement; failed to report cases that were lost; requested and received funding for a case after it had been lost; sought and obtained reimbursement for advertising expenses by falsely listing them as litigation expenses; and mischaracterized its financial position.

3

fees. R & B denied it committed a material breach of the agreement.[2] R & B requested that the arbitration panel deny Augusta's claims and award R & B damages for usury and punitive damages.

## THE ARBITRATION

The dispute was taken to arbitration, per the parties' contract. The arbitration panel held a hearing on February 5, 6, and 7, 2008, but did not enter its decision until January 18, 2009. Docket No. 1-3. The contract between the parties provides that Tennessee law will apply. The Final Award was issued by a "split panel," with one of the three arbitrators dissenting.

The arbitration panel found:

>  (1) Augusta did not fraudulently or negligently induce R & B to enter into the agreement (p.6);

>  (2) the agreement is not an illegal and unenforceable fee-splitting arrangement (p. 6);

>  (3) the agreement is not an unenforceable usurious loan (p.7);

>  (4) written notice as strictly required by the agreement was not always given by R & B (p. 8);

>  (5) however, Augusta did not prove that it would have terminated funding or altered its conduct toward R & B had it been furnished the information and neither did Augusta prove that it had been monetarily harmed by the alleged failures to give notices as required (p.8);

>  (6) although R & B's alleged failures to provide information may have constituted breaches of Section 4.4(a) and (b) of the agreement, they were not fraudulent acts or omissions or material misrepresentations (p. 8);

---

[2] Specifically, it claimed that Augusta breached its obligation of good faith and fair dealing by terminating the agreement when it was not in breach; Augusta fraudulently induced R & B into various agreements; the agreement was an improper fee-splitting arrangement, provided for illegal liquidated damages, violated public policy and was unenforceable; the agreement violated state usury laws; and Augusta improperly collected amounts from R & B under the agreement.

4

(7) thus, any failures to provide information did not trigger the remedies allowed by Section 9.5 or the second sentence of Section 7.5. of the agreement (p.8);

(8) R & B's failure to make timely payments was a breach of the agreement and Augusta is entitled to certain remedies (p.9);

(9) R & B should not have included advertising costs as litigation expenses, but their actions were not fraudulent or material misrepresentations; and the arbitrators did not find the amount, if any, that Augusta was damaged by the payment of advertising costs (p.9);

(10) any alleged misstatements concerning the Zyprexa litigation were not breaches of the parties' agreement (p.9); and

(11) the second sentence of Section 7.5 of the agreement, "when and as applied to the peculiar facts of this case as presented at the hearing," calls for a penalty and is unenforceable because it is not a reasonable predictor of potential damages for all situations (pp.10-11).

Docket No. 1-3.

The arbitration panel then awarded the following relief:

(1) Augusta is entitled to cease all further funding;

(2) Augusta is entitled to the recovery of funding for lost cases, $712,170.21, plus interest at 10% per annum, from the date Augusta declared R & B to be in default;

(3) pending cases will be governed by the remedy provided in the first sentence of Section 7.5; that is, Augusta will be entitled to its funding and fees for such cases in the same manner as provided in Section 4.4; and

(4) R & B shall provide Augusta a detailed accounting of all funded cases, periodic and annual reports until all cases for which Augusta has provided funding have finally concluded and R & B has paid Augusta all amounts owed under the Agreement. Docket No. 1-3, pp. 11-12.

ISSUES PRESENTED

R & B contends that the arbitration panel exceeded its authority by entering an award that refashions and materially changes the terms of the parties' agreement in violation of Section 12.2(a) of that agreement and erred by awarding damages to include the repayment of funds advanced on lost cases. Augusta argues that the Court should confirm the award because the Federal Arbitration Act presumes the confirmation of arbitration awards and the arbitrators did not exceed their authority. Various other issues are presented by the parties, but they do not need to be addressed by the Court given the findings and conclusions contained herein.

LEGAL STANDARDS

The Federal Arbitration Act provides that a court must confirm an arbitration award unless it is vacated, modified or corrected as prescribed in sections 10 and 11. 9 U.S.C. § 9. A court may vacate the award if (1) it was procured by corruption, fraud or undue means; (2) there is evident partiality or corruption of the arbitrators; (3) the arbitrators prejudiced a party's rights by refusing to postpone a hearing or hear evidence or engaged in other misbehavior by which the rights of a party were prejudiced; or (4) the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10.[3]

---

[3] The FAA also provides that a court may modify or correct an arbitration award if (1) there was an evident miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) the arbitrators awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or (3) the award is imperfect in matter of form not affecting the merits of the controversy. 9 U.S.C. § 11. In addition, the statute provides that the order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties. *Id*.

The Supreme Court has held that the grounds stated in the FAA for vacating or for modifying or correcting an arbitration award constitute the exclusive grounds for expedited vacatur and modification of an arbitration award. *Hall Street Associates v. Mattel, Inc.*, 128 S.Ct. 1396, 1403 (2008); *Grain v. Trinity Health, Mercy Health Services, Inc.*, 551 F.3d 374, 378 (6th Cir. 2008).[4]

FINDINGS AND CONCLUSIONS

The Court finds that the arbitration panel in this case exceeded its powers by fashioning a remedy that added to, altered and/or modified the terms and conditions of the parties' agreement in violation of Section 12.2(a) of that agreement. 9 U.S.C. § 10(4).

Arbitrators are limited to the powers the parties confer on them. *NCR Corp. v. SAC-CO, Inc.*, 43 F.3d 1076, 1082 (6th Cir. 1995). Thus, the arbitrators here were bound by the terms of the parties' agreement. Section 12.2 of that agreement specifically stated that "no arbitration panel shall have any power to add to, alter or modify the terms and conditions of this Agreement." Docket No. 1-1.

Yet, the arbitrators, after finding that the second sentence of Section 7.5 constituted an unenforceable penalty, determined that not only could they "enforce the remainder of the contract without the offending term," which they did not do; but also they could "so limit the application of the offending term and avoid any unconscionable result." Docket No. 1-3, p. 11. "So limiting" the application of the offending term, rather than excising it altogether, violates Section 12.2 of the parties' agreement by adding to, altering or modifying its terms.

---

[4] The Court need not reach the issue of whether the "manifest disregard of the law" standard survives the *Hall Street* decision. *See, e.g., Grain v. Trinity Health, Mercy Health Services, Inc.*, 551 F/3d 374 (6th Cir. 2008) and *Coffee Beanery, LTD v. WW, LLC,* 2008 WL 4899478 (6th Cir. Nov. 14, 2008).

7

In other words, by limiting the terms of Section 7.5 to make them "less harsh," the arbitration panel exceeded its authority specifically set forth in Section 12.2 of the agreement. Therefore, in fashioning the remedy, the arbitrators exceeded their powers and, pursuant to 9 U.S.C. § 10(4), their arbitration award must be vacated.

## CONCLUSION

For these reasons, Reich and Binstock's Motion to Vacate (Docket No. 12) is GRANTED, and Augusta Capital's Motion to Confirm, Enter and Enforce (Docket No. 1) is DENIED. The Final Award of January 18, 2009 (Docket No. 1-3) is vacated.

IT IS SO ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE